**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NEXTPOINT, INC., | ) | |
| | ) | |
| | ) | Case No. 10-CV-3515 |
| Plaintiff, | ) | |
| | ) | Judge Der-Yeghiayan |
| vs. | ) | |
| | ) | Magistrate Judge Gilbert |
| CASE CENTRAL, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## ANSWER TO COMPLAINT

Defendant CaseCentral, Inc. ("Defendant"), by and through its attorneys, answers the

Complaint filed by Plaintiff Nextpoint, Inc. ("Plaintiff") as follows:

1.     Nextpoint has been an innovator in the development of internet-based, software applications for legal, compliance and regulatory purposes.  Nextpoint has achieved success in the marketplace delivering its software services (the "Software Services") to major law firms and corporations throughout the nation.  Presently, Nextpoint's roster of clients is comprised of some of the nation's most well respected law firms and several of the largest corporations in the United States.

**ANSWER:**     Defendant is without information or knowledge sufficient to form a

belief as to the allegations in this paragraph.

2.     A significant reason for Nextpoint's success in the marketplace was its early commitment to, and adoption of, "cloud computing" technology in late 2006.  Cloud computing is a means whereby the internet is used to efficiently access processing power and storage on an on-demand basis.  Also referred to as software-as-a-service ("SaaS") application, Nextpoint's Software Services are typically deployed to customers over the internet.  Nextpoint's innovations in cloud computing have received acclaim from independent technology publications, programming user groups and are regularly discussed by leading legal technology publications and blogs.

**ANSWER:** Defendant admits that "a means whereby the internet is used to efficiently access processing power and storage on an on-demand basis" is one possible definition of the term "cloud computing." Defendant is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

3. Case Central is a direct competitor of Nextpoint. It offers similar, but technically inferior, web-based litigation support services to law firms and corporations. This has led Case Central to embark on a systematic effort to unlawfully obtain, and take credit for, Nextpoint's innovations and underlying technology that it has developed over several years. First, in November 2009, a full two years after Nextpoint had deployed a SaaS application for use in connection with litigation and trial support services, Case Central falsely claimed to have "the industry's first" SaaS application. Second, in November 2009, Nextpoint released a new service under its mark "DISCOVERY CLOUD" and, two months later, filed a federal trademark application for that mark. A mere six weeks thereafter, in March 2010, Case Central released its competing service under the confusingly similar mark "eDiscovery Cloud" and filed an application for the mark.

**ANSWER:** Defendant denies that it has ever directly competed with Nextpoint. Defendant admits that it offers "web-based litigation support services to law firms and corporations," but denies that such services are "similar, but technically inferior" to those offered by Plaintiff. Defendant denies that it has "embark[ed] on a systematic effort to unlawfully obtain, and take credit for, Nextpoint's innovations and underlying technology that it has developed over several years." Defendant is without information or knowledge sufficient to form a belief as to Plaintiff's alleged "deployment" of an "SaaS application for use in connection with litigation and trial support services." Defendant admits that, on November 17, 2009, Defendant issued a press release stating, *inter alia*, that "CaseCentral operates the industry's first litigation support and eDiscovery software delivered via multi-tenant SaaS," but denies that this statement was false. Defendant admits that, on January 28, 2010, according to public records available to Defendant, Plaintiff filed a federal trademark application concerning the alleged mark "DISCOVERY CLOUD," but Defendant is without information or knowledge sufficient to

form a belief as to Plaintiff's alleged release of "a new service under its mark DISCOVERY

CLOUD." Defendant admits that, on March 3, 2010, Defendant filed a federal trademark

application concerning the mark "EDISCOVERY CLOUD," but denies that "[a] mere six weeks

thereafter, in March 2010, Case Central released its competing service under the confusingly

similar mark 'eDiscovery Cloud.'" Defendant denies the remaining allegations in this paragraph.

4.      <u>Third</u>, in May 2010, a Director of Product Management for Case Central
attempted to misappropriate Nextpoint's proprietary technology and infrastructure. This person
sent Nextpoint a fraudulent email, which was traced back to an IP address owned and operated
by Case Central. In the minutes leading up to the transmission of the fraudulent email by Case
Central's Director of Product Management, Nextpoint's website was accessed simultaneously by
multiple IP addresses owned and operated by Case Central. Upon information and belief, the
attempted misappropriation of Nextpoint's proprietary information was a concerted effort by
several members of Case Central.

**ANSWER:**      Defendant admits that William Wagner, Director of Product Management

at CaseCentral, sent the e-mails appended as Exhibit D to the Complaint on May 10, 2010

seeking to confirm that which Nextpoint had publicly represented. However, Defendant denies

that Mr. Wagner "attempted to misappropriate Nextpoint's proprietary technology and

infrastructure," and that the aforementioned e-mails were part of "a concerted effort by several

members of Case Central." Defendant is without information or knowledge sufficient to form a

belief as to whether "Nextpoint's website was accessed simultaneously by multiple IP addresses

owned and operated by Case Central" but denies that accessing a publicly facing website is

actionable. Defendant denies the remaining allegations in this paragraph.

5.      Such conduct is part of an ongoing effort by Case Central to (i) make false
representations concerning Nextpoint's cloud-computing applications in order to obtain an unfair
advantage over Nextpoint; (ii) trade upon Nextpoint's goodwill; and (iii) misappropriate
Nextpoint's proprietary information through false pretenses. These actions, and the other
conduct described herein, violate both federal and state laws governing intellectual property and
unfair competition. Accordingly, Nextpoint is asking this Court to both: (a) enjoin Case
Central's unlawful conduct; and (b) award Nextpoint substantial monetary relief.

**ANSWER:** Defendant admits that Plaintiff, in its Complaint, seeks injunctive relief and damages. Defendant denies the remaining allegations in this paragraph.

## PARTIES, JURISDICTION AND VENUE

6.      Plaintiff, Nextpoint, is an Illinois corporation with its principal place of business in Cook County, Illinois. The company's headquarters are in Illinois. Nextpoint provides its Software Services to customers throughout the United States.

**ANSWER:** Defendant admits that Plaintiff is an Illinois corporation with its headquarters in Illinois. Defendant is without information or knowledge sufficient to form a belief as to the remaining allegations in this paragraph.

7.      Defendant, Case Central, is a California corporation with its principal place of business in San Francisco, California. It has offices in California and New York. Case Central was formed in or around 1993, and provides web-based litigation support software applications and related services to large law firms and corporations in various states, including Illinois.

**ANSWER:** Defendant admits the allegations in this paragraph.

8.      Nextpoint's and CaseCentral's products and services are sold in and affect interstate commerce.

**ANSWER:** Paragraph 8 of the Complaint contains legal conclusions as to which no response is required. To the extent a response is required, Defendant denies the allegations in this paragraph.

9.      This Court has jurisdiction over Nextpoint's federal claims pursuant to 15 U.S.C. §1121 (action arising under the Lanham Act), 28 U.S.C. §1331 (federal question), 28 U.S.C. §1332 (diversity), 28 U.S.C. §1338(a) (any action of Congress relating to trademarks) and 28 U.S.C. §1338(b) (action asserting a claim of unfair competition joined with a substantial and related claim under the trademark laws). This Court has jurisdiction over Nextpoint's state law claims pursuant to 28 U.S.C. §1367 (supplemental jurisdiction) and 28 U.S.C. §1332 (diversity).

**ANSWER:** Paragraph 9 of the Complaint contains legal conclusions as to which no response is required. To the extent a response is required, Defendant denies the allegations in this paragraph.

10.     As set forth in the following Sections, this Court has personal jurisdiction over Case Central because of its systematic and continuous business dealings in this District and it committed tortious acts in this District, which form bases for the claims in this action.

**ANSWER:** Paragraph 10 of the Complaint contains legal conclusions as to which no response is required.  To the extent a response is required, Defendant denies the allegations in this paragraph.

11.     Venue is proper in this District under 28 U.S.C. §1391, because a substantial part of the events giving rise to the actions complained of herein occurred in this District, and Nextpoint is being injured in this District.

**ANSWER:** Paragraph 11 of the Complaint contains legal conclusions as to which no response is required.  To the extent a response is required, Defendant denies the allegations in this paragraph.

## NEXTPOINT'S BUSINESS

12.     Nextpoint develops and licenses its proprietary Software Services, which provide corporations and law firms with a cost-effective technology solution to manage electronically stored information, including vast amounts of electronic mail, documents, spreadsheets, depositions, videos, transcripts and demonstrative exhibits.

**ANSWER:** Defendant is without information or knowledge sufficient to form a belief as to the allegations in this paragraph.

13.     Over the last five years, in order to deliver its proprietary Software Services, Nextpoint has invested a substantial amount of time and money on such things as:  engineering, design, market research, customer education and user support functions.

**ANSWER:** Defendant is without information or knowledge sufficient to form a belief as to the allegations in this paragraph.

14.     Nextpoint uses cloud computing technology to process vast quantities of electronically stored information.  This technology is also used to enable clients to search, organize and manage the information for a wide range of legal, regulatory and compliance purposes.

**ANSWER:** Defendant is without information or knowledge sufficient to form a belief as to the allegations in this paragraph.

15. Nextpoint has invested considerable time, effort and resources in protecting the proprietary nature of its Software Services since at least as early as July 2006.

**ANSWER:** Defendant is without information or knowledge sufficient to form a belief as to the allegations in this paragraph.

### CASE CENTRAL'S FALSE AND MISLEADING STATEMENTS

16. Case Central has made misleading and false representations of fact concerning its competing products and services.

**ANSWER:** Defendant denies the allegations in this paragraph.

17. Case Central is claiming credit for innovations made by Nextpoint. In its November 17, 2009 press release, titled "Case Central Leads eDiscovery Software Usage Growth in 2009 Am Law Tech Survey," (the "November 17 Press Release") the following statement is made:

Case Central operates the industry's first litigation support and eDiscovery software delivered via multi-tenant Cloud Computing/SaaS.

These statements are false. Nextpoint has extensively promoted and licensed the Software Services in the marketplace since late 2006.

**ANSWER:** Defendant denies that it is "claiming credit for innovations made by Nextpoint." Defendant admits that, on November 17, 2009, Defendant issued a press release stating, *inter alia*, that "CaseCentral operates the industry's first litigation support and eDiscovery software delivered via multi-tenant SaaS," but denies that this statement was false. Defendant is without information or knowledge sufficient to form a belief as to the allegation that "Nextpoint has extensively promoted and licensed the Software Services in the marketplace since late 2006." Defendant denies the remaining allegations in this paragraph.

18. The statements falsely indicate that Case Central is the first, and perhaps only, provider of a web-based software application for litigation and trial support services.

**ANSWER:** Defendant denies the allegations in this paragraph.

19.    Case Central intentionally caused misleading and false representations of fact to be published on its website and in other media and promotional materials.

**ANSWER:** Defendant denies the allegations in this paragraph.

20.    Case Central caused such misleading and false representations of fact to be published with the intent to sell its web-based litigation support software application.

**ANSWER:** Defendant denies the allegations in this paragraph.

21.    Case Central caused such misleading and false representations of fact to be published to induce customers to rely on its representations in making decisions about which litigation support application to purchase.

**ANSWER:** Defendant denies the allegations in this paragraph.

22.    Case Central either intended, recognized or should have recognized that its misleading and false representations would result in harm to the pecuniary interests of Nextpoint by harming its reputation and goodwill in its Software Services.

**ANSWER:** Defendant denies the allegations in this paragraph.

23.    Case Central intends to continue making these misleading and false representations by publishing these or similar misleading and false representations of fact on its website and in promotional materials and advertisements.

**ANSWER:** Defendant denies the allegations in this paragraph.

24.    Case Central's misleading and false representations of fact have been used in commerce that may be lawfully regulated by Congress.

**ANSWER:** Paragraph 24 contains legal conclusions as to which no response is required.

To the extent a response is required, Defendant denies the allegations in this paragraph.

25.    Nextpoint has been damaged and irreparably harmed by the conduct of Case Central as alleged herein.

**ANSWER:** Defendant denies the allegations in this paragraph.

26.    Nextpoint has no adequate remedy at law, and unless Case Central is restrained and enjoined by this Court, said conduct will continue, thereby causing further damage and irreparable injury to Nextpoint, including to its goodwill and business reputation.

**ANSWER:**  Defendant denies the allegations in this paragraph.

### THE INFRINGEMENT OF NEXTPOINT'S TRADEMARK RIGHTS

27.     Nextpoint has been using its federally registered "Nextpoint" trademark in connection with the promotion and sale of its products and services since January 2006.

**ANSWER:**  Defendant is without information or knowledge sufficient to form a belief as to the allegations in this paragraph.

28.     To further promote and distinguish its Software Services and related services in the marketplace, Nextpoint adopted and began using a family of "Cloud" trademarks in or around November 2009.

**ANSWER:**  Defendant admits that, on January 28, 2010, according to public records available to Defendant, Plaintiff filed federal trademark applications concerning the alleged marks "DISCOVERY CLOUD," "TRIAL CLOUD" and "PRESERVATION CLOUD." Defendant is without information or knowledge sufficient to form a belief as to the remaining allegations in this paragraph.

29.     Specifically, Nextpoint has adopted and has been using the marks DISCOVERY CLOUD, TRIAL CLOUD, and PRESERVATION CLOUD in connection with the promotion and sale of the Software Services (the "Cloud Marks").

**ANSWER:**  Defendant admits that, on January 28, 2010, according to public records available to Defendant, Plaintiff filed federal trademark applications concerning the alleged marks "DISCOVERY CLOUD," "TRIAL CLOUD" and "PRESERVATION CLOUD." Defendant is without information or knowledge sufficient to form a belief as to the remaining allegations in this paragraph.

30.     Nextpoint owns the following trademark applications for its family of Cloud Marks, which are duly pending with the United States Patent and Trademark Office ("USPTO") on the Principal Register:

| MARK | APPL NO. | DATE FILED | GOODS/SERVICES |
|------|----------|------------|----------------|
| DISCOVERY CLOUD | 77/922,478 | 1-28-10 | Providing an internet-based |

| | | | |
|---|---|---|---|
| | | | integrated suite of applications, storage, and grid computing capacity for litigation and trial support services and graphical presentation services that include the following functionality: image generation, viewing and manipulation; text and metadata extraction; batch file format converting; batch uploading and downloading; search engine and search index generation; pdf generation and support; html file previewing; and mobile/smartphone compatibility. |
| TRIAL CLOUD | 77/922,489 | 1-28-10 | Providing an internet-based integrated suite of applications, storage, and grid computing capacity for litigation and trial support services and graphical presentation services that include the following functionality: image generation, viewing and manipulation; text and metadata extraction; batch file format converting; batch uploading and downloading; search engine and search index generation; pdf generation and support; html file previewing; and mobile/smartphone compatibility. |
| PRESERVATION CLOUD | 77/922,469 | 1-28-10 | Providing an internet-based integrated suite of applications, storage, and grid computing capacity for litigation and trial support services and graphical presentation services that include the following functionality: image generation, viewing and manipulation; text and metadata extraction; batch file format converting; batch uploading and downloading; search engine and search index generation; pdf generation and support; html file previewing; and |

| | | | mobile/smartphone compatibility. |
|---|---|---|---|

**ANSWER:**  Defendant admits that, on January 28, 2010, according to public records available to Defendant, Plaintiff filed federal trademark applications concerning the alleged marks "DISCOVERY CLOUD," "TRIAL CLOUD" and "PRESERVATION CLOUD." Defendant is without information or knowledge sufficient to form a belief as to the remaining allegations in this paragraph.

31.     These pending federal trademark applications provide constructive notice to Case Central and others of Nextpoint's claim of ownership of its family of Cloud Marks (15 U.S.C. § 1072).  True and correct copies of the TARR reports for Nextpoint's trademark applications are attached as Exhibit A.

**ANSWER:**  Plaintiff's allegation that its "federal trademark applications provide constructive notice to Case Central and others of Nextpoint's claim of ownership of its family of Cloud Marks" is a legal conclusion as to which no response is required.  To the extent a response is required, Defendant denies the aforementioned allegation.  Defendant is without information or knowledge sufficient to form a belief as to the remaining allegations in this paragraph.

32.     Nextpoint has received Office Actions for the DISCOVERY CLOUD, TRIAL CLOUD and PRESERVATION CLOUD applications, and none of these applications were rejected on the basis of any conflicting marks.

**ANSWER:**  Defendant admits that, according to public records available to Defendant, the United States Patent and Trademark Office sent to Plaintiff a "non-final action" regarding Plaintiff's January 28, 2010 trademark applications. Defendant is without information or knowledge sufficient to form a belief as to the remaining allegations in this paragraph.

33.     Nextpoint's Software Services have been referenced and promoted on the Internet, in various print publications and at trade shows.  For example, the Software Services have been referenced and promoted on Law Technology News, Law.com, the LegalTech tradeshow, and Nextpoint has been recognized as one of the top 100 companies "pioneering cloud computing and SaaS."

**ANSWER:** Defendant is without information or knowledge sufficient to form a belief as to the allegations in this paragraph.

34.     Nextpoint prominently features the Cloud Marks on its website at www.nextpoint.com.

**ANSWER:** Defendant is without information or knowledge sufficient to form a belief as to the allegations in this paragraph.

35.     Nextpoint has also used, and continues to use, the Cloud Marks in the following materials and media, among others:

- Internet "blog" postings;
- Electronic mail "blasts" to business contacts;
- Electronic mail taglines;
- Hard copy advertising materials such as brochures;
- Promotional materials to business contacts; and
- Legal technology trade shows.

**ANSWER:** Defendant is without information or knowledge sufficient to form a belief as to the allegations in this paragraph.

36.     Nextpoint has invested significant resources in promoting its Software Services throughout the United States using its Cloud Marks.

**ANSWER:** Defendant is without information or knowledge sufficient to form a belief as to the allegations in this paragraph.

37.     The Cloud Marks are inherently distinctive, and have acquired added distinctiveness through Nextpoint's use of the marks in commerce to identify and promote its business and services.

**ANSWER:** Paragraph 37 contains legal conclusions as to which no response is required. To the extent a response is required, Defendant denies the allegations in this paragraph.

38.     Nextpoint has established goodwill in connection with its business, which goodwill the public associates with the Cloud Marks. Indeed, the Cloud Marks have become the primary vehicle for the further development of Nextpoint's consumer goodwill.

**ANSWER:** Defendant is without information or knowledge sufficient to form a belief as to the allegations in this paragraph.

39.     This consumer goodwill and recognition constitutes one of Nextpoint's most valuable assets.  Accordingly, the integrity of the Cloud Marks is extremely valuable to Nextpoint and is crucial to the continued vitality and growth of its Software Services.

**ANSWER:** Defendant is without information or knowledge sufficient to form a belief as to the allegations in this paragraph.

**Case Central's Infringing Conduct**

40.     On March 3, 2010, almost four months after Nextpoint began its use and promotion of the Cloud Marks in connection with the Software Services and over a month after Nextpoint applied for its federal trademark registrations, Case Central filed:  (a) U.S. Trademark Application Serial No. 77/949,557 for the standard character mark EDISCOVERY CLOUD; and (b) U.S. Trademark Application Serial No. 77/949,540 for the standard character mark CASECENTRAL EDISCOVERY CLOUD (collectively referred to as the "Infringing Marks").

**ANSWER:** Defendant is without information or knowledge sufficient to form a belief as to Plaintiff's statements regarding the timing of Plaintiff's alleged "use and promotion of the Cloud Marks in connection with the Software Services."  Defendant admits that, on March 3, 2010, Defendant filed federal trademark applications concerning the marks "EDISCOVERY CLOUD" and "CASECENTRAL EDISCOVERY CLOUD."  Defendant denies the remaining allegations in this paragraph.

41.     Both applications are based on Case Central's intent to use those phrases in conjunction with "providing temporary use of on-line non-downloadable software for document storage, review, management and production services; providing temporary use of on-line non-downloadable software for networking and integration with other software and systems to exchange data, files and information."

**ANSWER:** Defendant admits that its March 3, 2010 federal trademark applications concerning the marks "EDISCOVERY CLOUD" and "CASECENTRAL EDISCOVERY CLOUD" contained the language "[p]roviding temporary use of on-line non-downloadable software for document storage, review, management and production services; providing

temporary use of on-line non-downloadable software for networking and integration with other software and systems to exchange data, files and information." Defendant denies the remaining allegations in this paragraph.

42.     Case Central is prominently displaying the Infringing Marks on its website www.casecentral.com. A copy of web page printouts depicting the manner in which Case Central is using the Infringing Marks are attached as Exhibit B.

**ANSWER:** Defendant admits that its website, located at www.casecentral.com, uses the phrases "eDiscovery cloud" and "CaseCentral eDiscovery Cloud." Defendant denies the remaining allegations in this paragraph.

43.     Case Central began promoting its web-based litigation support software application under the Infringing Marks without Nextpoint's permission. Case Central did this despite Nextpoint's presence in the marketplace and pending applications for registration of the marks DISCOVERY CLOUD, TRIAL CLOUD and PRESERVATION CLOUD.

**ANSWER:** Defendant admits that its website, located at www.casecentral.com, uses the phrases "eDiscovery cloud" and "CaseCentral eDiscovery Cloud." Defendant further admits that it did not obtain Plaintiff's permission to use the aforementioned phrases on Defendant's website, but denies that such permission was required. Defendant further admits that, on January 28, 2010, according to public records available to Defendant, Plaintiff filed federal trademark applications concerning the alleged marks "DISCOVERY CLOUD," "TRIAL CLOUD" and "PRESERVATION CLOUD." Defendant denies the remaining allegations in this paragraph.

44.     Case Central's adoption and use of the Infringing Marks in commerce, as described herein, began after Nextpoint's use and application for registration of the DISCOVERY CLOUD, TRIAL CLOUD and PRESERVATION CLOUD trademarks.

**ANSWER:** Defendant admits that, in March 2010, Defendant began using the term "CaseCentral eDiscovery Cloud" to market certain services that Defendant had been previously offering and referring to as cloud computing. Defendant denies the remaining allegations in this paragraph.

45.     Case Central's use of the Infringing Marks in commerce, as described herein, is likely to cause confusion among consumers as to the source of Case Central's products or services, and as to whether Case Central is sponsored by, or affiliated with, Nextpoint in any manner.

**ANSWER:**  Defendant denies the allegations in this paragraph.

46.     During the time that Case Central has been using the Infringing Marks, Case Central was on notice of Nextpoint's Cloud Marks and the well-established prior use of the Cloud Marks with Nextpoint's business and services.

**ANSWER:** Defendant denies the allegations in this paragraph.

### CASE CENTRAL'S ATTEMPT TO
### MISAPPROPRIATE NEXTPOINT'S TECHNOLOGY

47.     On May 10, 2010, Nextpoint's Technology Lab received a bogus e-mail that requested "documentation about how you are providing the cloud services."  A true and accurate copy of that e-mail is attached hereto as Exhibit C.

**ANSWER:**  Defendant admits that William Wagner, Director of Product Management at CaseCentral, sent the e-mails appended as Exhibit D to the Complaint on May 10, 2010 to confirm what Nextpoint was publicly stating.  Defendant is without information or knowledge sufficient to form a belief as to the truth of Plaintiff's allegations regarding Exhibit C, as that exhibit was not included in the complaint served upon Defendant.  Defendant denies the remaining allegations in this paragraph.

48.     Although the e-mail purports to be from "James Colcord, Director of IT and eDiscovery Services from the law firm Basso, Ullrich and Pantani, LLP," the name, title and law firm in the email are all fictitious.

**ANSWER:**  Defendant admits that William Wagner, Director of Product Management at CaseCentral, sent the e-mails appended as Exhibit D to the Complaint on May 10, 2010.  Defendant avers that the contents of Exhibit D speak for themselves.  Defendant denies the remaining allegations in this paragraph.

49.     Nextpoint's Technology Lab is not normally involved in answering sales and marketing questions.  Initiating contact with this department within Nextpoint was, itself, highly unusual and cause for immediate concern within the company.

**ANSWER:**  Defendant is without information or knowledge sufficient to form a belief as to the allegations in this paragraph.

50.     A search of the terms "Basso," "Ullrich," and "Pantani" on Google revealed that they are the surnames of current or former professional road bicycle racers, namely, Ivan Basso, Jan Ullrich and Marco Pantani, who are all alleged to have been involved in doping scandals.

**ANSWER:**  Defendant is without information or knowledge sufficient to form a belief as to the allegations in this paragraph.

51.     The e-mail was actually originated by "wwagnerww3@yahoo.com."  On information and belief, this e-mail address belongs to William Wagner, who is Case Central's Director of Product Management.

**ANSWER:**  Defendant admits that William Wagner, Director of Product Management at CaseCentral, sent the e-mails appended as Exhibit D to the Complaint on May 10, 2010.  Defendant avers that the contents of Exhibit D speak for themselves.  Defendant denies the remaining allegations in this paragraph.

52.     Nextpoint's website www.nextpoint.com was accessed simultaneously by multiple IP addresses owned and operated by Case Central in the minutes leading up to the transmission of Mr. Wagner's e-mail on May 10, 2010.

**ANSWER:**  Defendant is without information or knowledge sufficient to form a belief as to the allegations in this paragraph but denies the suggestion that accessing a public website is actionable.

53.     Nextpoint responded to the e-mail with an e-mail of its own, in which it offered to set up a call with the Sales Department of Nextpoint.  In reply, the original sender of the e-mail made a second request for Nextpoint's proprietary information.  A true and accurate copy of this e-mail is attached hereto as Exhibit D.

**ANSWER:**  Defendant admits that William Wagner, Director of Product Management at CaseCentral, sent the e-mails appended as Exhibit D to the Complaint on May 10, 2010.

Defendant avers that the contents of Exhibit D speak for themselves.  Defendant denies the remaining allegations in this paragraph.

54.     This deception is the latest in a pattern of behavior by which Case Central is attempting to misappropriate Nextpoint's technological innovations and marketing messaging in order to accelerate the development of a purposefully confusingly similar software application.

**ANSWER:**  Defendant denies the allegations in this paragraph.

55.     Case Central's actions have been willful and intentional and are intended to trade on the reputation and goodwill of Nextpoint, to confuse and deceive consumers and to unfairly compete with Nextpoint.

**ANSWER:**  Defendant denies the allegations in this paragraph.

## COUNT I

### Unfair Competition In Violation Of
### Section 43(a) Of The Lanham Act, 15 U.S.C. §1125(a)(1)(A)

56.     Nextpoint repeats and realleges the allegations of paragraphs 1 through 55 above, as though fully set forth herein.

**ANSWER:**  Defendant repeats and realleges its responses to Paragraphs 1 through 55 of the Complaint.

57.     Nextpoint's Cloud Marks are valid, protectible trademarks.

**ANSWER:**  Defendant denies the allegations in this paragraph.

58.     Case Central's use of the Infringing Marks, as described herein, is likely to cause confusion, deception or misunderstanding among consumers as to the source, sponsorship, approval or certification of Case Central's products and services, and give rise to the incorrect belief that Case Central has some connection or affiliation with Nextpoint in violation of 15 U.S.C. §1125(a)(1)(A).

**ANSWER:**  Defendant denies the allegations in this paragraph.

59.     Case Central's reckless disregard and lack of concern for the confusion caused by its acts renders this case exceptional under 15 U.S.C. §1117(a).

**ANSWER:**  Defendant denies the allegations in this paragraph.

60.     As a direct and proximate result of Case Central's wrongful conduct, Case Central has caused Nextpoint irreparable harm and injury.

**ANSWER:**  Defendant denies the allegations in this paragraph.

61.     Injury to Nextpoint is continuing and will continue unless Case Central's actions are restrained by the Court.

**ANSWER:**  Defendant denies the allegations in this paragraph.

62.     Unless Case Central is enjoined from engaging in its wrongful conduct, Nextpoint will suffer further irreparable injury and harm, for which it has no adequate remedy at law.

**ANSWER:**  Defendant denies the allegations in this paragraph.

## COUNT II

### False Advertising In Violation Of
### Section 43(a) Of The Lanham Act, 15 U.S.C. §1125(a)(1)(B)

63.     Nextpoint repeats and realleges the allegations of paragraphs 1 through 55 above, as though fully set forth herein.

**ANSWER:**  Defendant repeats and realleges its responses to Paragraphs 1 through 55 of

the Complaint.

64.     Case Central's actual and implied misrepresentations about innovations made by Nextpoint in connection with the Software Services constitute unfair competition and false advertising in violation of 15 U.S.C. §1125(a)(1)(B).

**ANSWER:**  Defendant denies the allegations in this paragraph.

65.     Case Central's actual and implied misrepresentations are likely to influence the purchasing decisions of web-based litigation support software applications purchasers.

**ANSWER:**  Defendant denies the allegations in this paragraph.

66.     Case Central's acts have damaged, and will continue to damage, the pecuniary interests of Nextpoint.

**ANSWER:**  Defendant denies the allegations in this paragraph.

67.     If Case Central is permitted to continue its actual and implied misrepresentations, Nextpoint will suffer further irreparable harm for which it has no adequate remedy at law.

**ANSWER:** Defendant denies the allegations in this paragraph.

## COUNT III

### Violation Of Illinois Uniform
### Deceptive Trade Practices Act, 815 ILCS 510/2

68.     Nextpoint repeats and realleges the allegations of paragraphs 1 through 55 above, as though fully set forth herein.

**ANSWER:** Defendant repeats and realleges its responses to Paragraphs 1 through 55 of

the Complaint.

69.     Case Central's use of the Infringing Marks, as described herein, is likely to cause confusion, deception or misunderstanding among consumers as to the source, sponsorship, approval or certification of Case Central's products and services, and give rise to the incorrect belief that Case Central has some connection or affiliation with Nextpoint.

**ANSWER:** Defendant denies the allegations in this paragraph.

70.     Case Central has willfully engaged in the foregoing deceptive trade practices.

**ANSWER:** Defendant denies the allegations in this paragraph.

71.     Case Central's actions have caused and continue to cause injury and damages to Nextpoint.

**ANSWER:** Defendant denies the allegations in this paragraph.

72.     As a direct and proximate result of Case Central's wrongful conduct, Case Central has caused Nextpoint irreparable harm and injury.

**ANSWER:** Defendant denies the allegations in this paragraph.

73.     Injury to Nextpoint is continuing and will continue unless Case Central's actions are restrained by the Court.

**ANSWER:** Defendant denies the allegations in this paragraph.

74.     Unless Case Central is enjoined from engaging in its wrongful conduct, Nextpoint will suffer further irreparable injury and harm, for which it has no adequate remedy at law.

**ANSWER:** Defendant denies the allegations in this paragraph.

## COUNT IV

### Violation Of Illinois Consumer Fraud
### And Deceptive Business Practices Act, 815 ILCS 505/2

75.     Nextpoint repeats and realleges the allegations of paragraphs 1 through 55 above, as though fully set forth herein.

**ANSWER:**  Defendant repeats and realleges its responses to Paragraphs 1 through 55 of

the Complaint.

76.     Case Central's use of the Infringing Marks, as described above, is likely to cause a public injury and a detrimental effect on consumers by causing confusion, deception or misunderstanding as to the source, sponsorship, approval or certification of Case Central's products and services, and by giving rise to the incorrect belief that Case Central has some connection or affiliation with Nextpoint.

**ANSWER:**  Defendant denies the allegations in this paragraph.

77.     Case Central's conduct implicates consumer protection concerns because it concerns trade practices directed at the market generally.

**ANSWER:**  Defendant denies the allegations in this paragraph.

78.     Case Central's misconduct was performed with malice or reckless indifference to the rights of Nextpoint.

**ANSWER:**  Defendant denies the allegations in this paragraph.

79.     Case Central's conduct has caused and continues to cause injury and damages to Nextpoint.

**ANSWER:**  Defendant denies the allegations in this paragraph.

80.     As a direct and proximate result of Case Central's wrongful conduct, Case Central has caused Nextpoint irreparable harm and injury.

**ANSWER:**  Defendant denies the allegations in this paragraph.

81.     Injury to Nextpoint is continuing and will continue unless Case Central's actions are restrained by the Court.  Unless Case Central is enjoined from engaging in its wrongful conduct, Nextpoint will suffer further irreparable injury and harm, for which it has no adequate remedy at law.

**ANSWER:**  Defendant denies the allegations in this paragraph.

## COUNT V

### Illinois Common Law Unfair
### Competition And Trademark Infringement

82.     Nextpoint repeats and realleges the allegations of paragraphs 1 through 55 above, as though fully set forth herein.

**ANSWER:** Defendant repeats and realleges its responses to Paragraphs 1 through 55 of

the Complaint.

83.     Case Central's use of the Infringing Marks, as described above, constitutes common law unfair competition and trademark infringement because such use is likely to cause confusion, deception or misunderstanding among consumers as to the source, sponsorship, approval or certification of Case Central's products and services, and give rise to the incorrect belief that Case Central has some connection or affiliation with Nextpoint.

**ANSWER:** Defendant denies the allegations in this paragraph.

84.     As a direct and proximate result of Case Central's wrongful conduct, Case Central has caused Nextpoint irreparable harm and injury.

**ANSWER:** Defendant denies the allegations in this paragraph.

85.     Injury to Nextpoint is continuing and will continue unless Case Central's actions are restrained by the Court.  Unless Case Central is enjoined from engaging in its wrongful conduct, Nextpoint will suffer further irreparable injury and harm, for which it has no adequate remedy at law.

**ANSWER:** Defendant denies the allegations in this paragraph.

WHEREFORE, Nextpoint requests that this Court grant the following relief:

A.     Adjudging and decreeing that Case Central has committed acts of unfair competition and infringed Nextpoint's family of Cloud Marks pursuant to 15 U.S.C. §1125(a)(1)(A), 815 ILCS 505/2 and 815 ILCS 510/2, and in violation of Illinois common law; and has made false and misleading representations in violation of 15 U.S.C. §1125(a)(1)(B), and in violation of Illinois common law.

B.     Issue a permanent injunction enjoining Case Central, its employees, agents, officers, owners, directors, attorneys, representatives, successors, affiliates, branches, subsidiaries, successors and assigns, and all those in concert or participation with any of them from imitating, copying, advertising, promotion, registering, using, reproducing or displaying in any manner whatsoever in United States Commerce:

1.     the Infringing Marks and any other name or mark which colorably imitates or is confusingly similar to the Cloud Marks, or that contribute to said colorable imitation or confusing similarity, alone or in combination with any other name(s), mark(s), term(s), word(s), logo(s), symbol(s), device(s), designation(s), and/or design(s) on or in connection with any product or service;

2.     any actual or implied false representations of fact concerning Nextpoint or any of Nextpoint's products or services; or

3.     any other designation, description or representation or any other thing calculated or likely to cause or contribute to confusion or mistake or to deceive or contribute to deception of the public into the belief that Case Central or its products or services are approved by, connected with, or related in any way to Nextpoint.

C.     Issue an order directing Case Central to immediately abandon with prejudice U.S. Trademark Application Serial No. 77/949,557 for the mark EDISCOVERY CLOUD and U.S. Trademark Application Serial No. 77/949,540 for the mark CASECENTRAL EDISCOVERY CLOUD.

D.     Issue an order requiring Case Central, pursuant to 15 U.S.C. §1118, to deliver up to the Court or to Nextpoint for destruction all labels, packages, brochures, wrappers, advertisements, promotions, letterhead and all other matter in the custody or under the control of Case Central bearing the Infringing Marks or any other designation likely to cause confusion with Nextpoint or its Cloud Marks.

E.     Issue an order requiring Case Central to publicly acknowledge that its goods and services offered under the Infringing Marks are not sponsored or endorsed by Nextpoint and that Case Central is not in any way associated with Nextpoint.

F.     Issue an order awarding monetary relief to Nextpoint in an amount to be fixed by the Court in its discretion as just, including: all profits received by Case Central as a result of its unlawful actions, said amount to be trebled, pursuant to 15 U.S.C. §1117; all damages sustained by Nextpoint as a result of Case Central's unlawful actions, said amount to be trebled, pursuant to 15 U.S.C. §1117; and prejudgment interest.

G.     Issue an order awarding monetary relief to Nextpoint in an amount to be fixed by the Court in its discretion as just for punitive damages under 815 ILCS 505/10a and Illinois common law; and prejudgment interest.

H.     Issue an order requiring Case Central, pursuant to 15 U.S.C. §1116, to file with the Court and serve upon Plaintiff within thirty (30) days after issuance of an injunction a report in writing and under oath setting forth in detail the manner and form in which Defendant has complied with the injunction.

I.      Issue an award in favor of Nextpoint of all reasonable attorneys' fees, costs and disbursements incurred by Plaintiff as a result of this action as provided by 15 U.S.C. §1117 and the laws of Illinois.

J.      Grant any such other and further relief as the Court deems appropriate.

**ANSWER:** Defendant denies that Plaintiff is entitled to the remedies Plaintiff seeks in its prayer for relief. Defendant denies the remaining allegations in Plaintiff's prayer for relief.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Complaint, or one or more counts set forth therein, fails to state a claim for which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrines of fair use, nominative use, functional use and/or descriptive use.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by reason of other parties' use of any marks at issue.

### FIFTH AFFIRMATIVE DEFENSE

Defendant has not infringed any applicable trademarks under federal or state law.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because, even assuming any trademark infringement occurred, such infringement was innocent.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitations.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of laches.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because Defendant's alleged conduct did

not actually or proximately cause any of the losses or damages allegedly sustained by Plaintiff.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrines of waiver, acquiescence,

and estoppel.

## PRAYER FOR RELIEF

WHEREFORE, Defendant prays for judgment:

A.      Dismissing the Complaint with prejudice;

B.      Awarding Defendant its costs and attorney's fees; and

C.      Awarding Defendant such other relief as the Court deems just and proper.


Date:   August 2, 2010

                                        Respectfully submitted,

                                        CaseCentral, Inc.


                                        By:     /s/Patrick J. Lamb
                                                One of its attorneys

Patrick J. Lamb
Reeghan W. Raffals
Valorem Law Group
35 E. Wacker Drive, 30th Floor

Chicago, Illinois  60601
Telephone:     (312) 676-5460
Facsimile:      (312) 676-5499
patrick.lamb@valoremlaw.com
reeghan.raffals@valoremlaw.com

William J. Frimel (pro hac petition pending)
Heffernan, Seubert & French LLP
1075 Curtis Street
Menlo Park, CA  94025
Telephone:     (650) 322-3048
Facsimile:      (650) 322-2976
Bill@HSFLLP.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 2, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filings to the following:

Eric N. Macey
Richard L. Miller II
Alexander L. Berg
NOVACK and MACEY LLP
100 N. Riverside Plaza
Chicago, IL 60606
(312) 419-6900

John A. Cullis
NEAL GERBER & EISENBERG LLP
Two N. LaSalle Street
Chicago, IL 60602
(312) 269-5988

_____/s/Patrick J. Lamb_____